Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Steve Jeffers*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Jeffers,<br><br>             Plaintiff,<br><br>      v.<br><br>Liberty Life Assurance Company of Boston; Wells Fargo & Company; Wells Fargo & Company Long-Term Disability Plan;<br><br>             Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Steve Jeffers (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1.    Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

-1-

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Wells Fargo & Company (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy (hereinafter referred to as the "Policy") which was fully insured by Liberty Life Assurance Company of Boston (hereinafter referred to as "Liberty Mutual").  The Company's purpose in sponsoring, administering and purchasing the Liberty Mutual policy was to provide disability insurance for its employees.  Upon information and belief, the Liberty Mutual policy may have been included in and part of an employee benefit plan, specifically named the Wells Fargo & Company Long-Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Liberty Mutual functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Liberty Mutual.

5. Liberty Mutual operated under a conflict of interest in evaluating Plaintiff's long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether he was disabled as well as the payor of benefits; *to wit*, Liberty Mutual's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of his disability benefits.

6. The Company, Liberty Mutual and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits he may be entitled to from any other Wells Fargo & Company Plan as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about March 4, 2013 due to serious medical conditions and was unable to work in his designated occupation as an Operational Risk Consultant 4. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10. Following his disability, Plaintiff filed a claim for short term disability benefits which was approved, by Liberty Mutual, and those benefits have been paid and exhausted. Plaintiff believes the fact that his short term disability claim was approved and exhausted using a similar definition of disability as is contained in the long term disability Policy, is relevant evidence for this Court to consider with regard to the reasonableness of

1 Liberty Mutual's denial in his LTD claim. Following the exhaustion of his short term disability benefits, Plaintiff then filed for long term disability benefits under the relevant Policy which was administered by Liberty Mutual, meaning it made the decision with regard to whether Plaintiff was disabled.

11. Upon information and belief, the relevant Liberty Mutual policy and definition of disability governing Plaintiff's long term disability claim is as follows:

> "Disability" and "Disabled" means:
>
> i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

12. In support of his claim for long term disability benefits, Plaintiff submitted to Liberty Mutual medical records from his treating physicians supporting his disability as defined by the relevant Liberty Mutual policy.

13. In a letter dated November 15, 2013, Liberty Mutual informed Plaintiff it was denying his claim for long term disability benefits.

14. As part of its review of Plaintiff's claim for long term disability benefits, Liberty Mutual obtained medical records only "paper reviews" from two doctors who are Liberty Mutual employees, Gilbert Wager, M.D. and Andrew O. Brown, M.D.

15. Upon information and belief, Plaintiff believes Drs. Wager and Brown may be long time employees for Liberty Mutual. As a result, Plaintiff believes Drs. Wager and Brown may have an incentive to protect their own employment with Liberty Mutual by providing medical records only paper reviews, which selectively review or ignore evidence

such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Liberty Mutual and which supported the denial of Plaintiff's claim.

16. Plaintiff questions the independence, impartiality and bias of Liberty Mutual's own employees to fully and fairly review his claim and he believes the consultants' opinions are adversarial to his claim because of their conflict of interest as Liberty Mutual employees. Plaintiff believes Liberty Mutual's financial conflict of interest is a motivating factor why it referred Plaintiff's claim to its own employees for review.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Liberty Mutual's November 15, 2013 denial and submitted additional medical, vocational and lay witness evidence demonstrating he met any definition of disability set forth in the relevant Liberty Mutual policy.

18. Plaintiff submitted to Liberty Mutual an April 16, 2014 Medical Source Statement and a narrative letter dated April 17, 2014 from his current treating medical provider who opined, "…[Plaintiff] is not only unprepared to return to his old job, but any job for that matter until his level of functioning is improved."

19. Plaintiff submitted to Liberty Mutual a May 16, 2014 Checklist Letter completed by another treating provider who confirmed he agreed Plaintiff is unable to work in any occupation at the current time.

20. Further supporting his appeal, Plaintiff submitted to Liberty Mutual a vocational report from a certified vocational expert dated April 13, 2014, who after reviewing Plaintiff's medical evidence, interviewing Plaintiff and reviewing the Policy, concluded, "Thus, it is my professional opinion, to a reasonable degree of vocational probability, that [Plaintiff] meets the own and any occupation definition of disability in the Liberty Mutual Policy and he is entitled to disability benefits on that policy."

21. In addition to the medical records and reports submitted to Liberty Mutual, Plaintiff submitted two sworn affidavits from his wife and mother who both confirmed Plaintiff is unable to work in any occupation and his medical condition has not improved in any way since his date of disability.

22. As part of its review of Plaintiff's claim for long term disability benefits, Liberty Mutual obtained a medical records only "paper review" of Plaintiff's claim from Dr. Sandra Kalnins.

23. Upon information and belief, Plaintiff believes Dr. Kalnins may be a long time medical consultant for the disability insurance industry and Liberty Mutual. As a result, Plaintiff believes Dr. Kalnins may have an incentive to protect her own consulting relationship with the disability insurance industry and Liberty Mutual by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and/or Liberty Mutual, which supported the denial of Plaintiff's claim.

24. In a letter dated May 21, 2014, in order to engage Liberty Mutual in a dialogue so he could perfect any alleged deficiencies in his claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Liberty Mutual and the opportunity to provide these reviews to his treating medical providers for their response prior to Liberty Mutual rendering a determination in his claim.

25. Prior to its September 16, 2014 denial letter, Liberty Mutual never shared with Plaintiff the report authored by Dr. Kalnins and never engaged Plaintiff or his treating medical providers in a dialogue so he could either respond to the report and/or perfect his claim. Liberty Mutual's failure to provide Plaintiff with the opportunity to respond to the

report precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

26. In a letter dated September 16, 2014, Liberty Mutual informed Plaintiff it was denying his claim for long term disability benefits. In the letter, Liberty Mutual notified Plaintiff he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

27. Upon information and belief, Liberty Mutual's November 15, 2013 and September 16, 2014 denial letters confirm it failed to provide a full and fair review and in the process committed several procedural violations pursuant to ERISA because it completely failed to credit, reference, consider, and/or selectively reviewed and de-emphasized most, if not all of Plaintiff's reliable evidence.

28. In evaluating Plaintiff's claim on appeal, Liberty Mutual had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in his best interests and other participants" which it failed to do. [1]

29. Liberty Mutual failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim. Liberty Mutual's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

30. Plaintiff believes Liberty Mutual provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate his claim; failing to have him examined by a medical professional when the policy allowed for an examination; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by him and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the impact the combination of those diagnoses and impairments would have on his ability to work; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

31. Plaintiff further believes the reason Liberty Mutual denied the claim by providing an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Liberty Mutual undertook as decision maker and payor of benefits which created an inherent conflict of interest and provided an incentive for it to deny the claim.

32. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Liberty Mutual and any individual who reviewed his claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest as well as any ERISA procedural violations which may have impacted or influenced Liberty Mutual's decision to deny his claim.

33. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Liberty Mutual as referenced herein are so flagrant they justify *de novo* review.

34. As a direct result of Liberty Mutual's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan, another relevant Wells Fargo & Company Plan, and/or the Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents.

35. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

36. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff his long term disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the Liberty Mutual Policy and/or the Plan from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon;

      B.      For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the conditions for termination of benefits;

      C.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

      D.      For such other and further relief as the Court deems just and proper.

DATED this 17th day of March, 2015.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff